JENNINGS et al. v. ROGERS SILVER PLATE CO.

(Circuit Court, D. Connecticut. November 3, 1902.)

No. 882.

1. PATENTS—DAMAGES FOR INFRINGEMENT—LACHES.

Complainants notified defendant of their claim of infringement before their patent was issued, and promised to notify it of the issuance, but did not do so; and defendant continued to make and sell the infringing article thereafter until suit was brought. *Held*, that complainants were entitled to recover only such damages, as were clearly and strictly proven.

2. SAME—LOSS OF PROFITS.

Where the demand for an article made after a patented design, which was, to a great extent, due to its novelty, had largely fallen off by the time the patent was issued, in consequence of its having then been on the market for a year and a half, it cannot be held that sales thereafter made by an infringer at a price so low as to leave scarcely any profit deprived the patentée of an equal number of sales at the higher price demanded by him, so as to entitle him to recover the profits he would have made on such sales as damages for the infringement.

In Equity. Suit for infringement of patent. On exceptions to master's report on re-reference.

J. C. Chamberlain, for complainants.

J. G. Calhoun, for defendant.

PLATT, District Judge. In the opinion of Judge Townsend sustaining the patent in this case, reported in 96 Fed. 340–342, there appear these significant paragraphs at the very end:

"It is not necessary to comment upon the broken promise of complainant, or the negligence of respondent in manufacturing and selling the infringing goods for more than a year and a half after the issuance of the patent without learning whether such a patent had been issued, and without making any further effort to learn about it, simply because counsel told him, as he says, that 'I could await a reply from Jennings Bros., who promised to send me a copy of their patent when issued.' The patent has expired, and the only question herein raised was whether or not complainant was entitled to an accounting. This should be allowed.

"The questions as to the effect of the alleged laches of complainant, and as to the interference by defendant with complainant's rights, can safely be reserved until the coming in of the master's report. Let an order be entered for an accounting, with costs."

The report came in; was duly excepted to by defendant, and sent back to the master, "to enable him to correct any errors of computation or transcription which he may find therein, and with leave to complainants to introduce further evidence as to damages, if they desire to do so." 105 Fed. 968.

So it appears that the questions arising out of the actions of both parties, which were before the court at the hearing on the merits,

¶ 1. Laches as a defense in suits for infringement of patents, see notes to Taylor v. Sawyer Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne, & Co., 36 C. C. A. 613.

¶ 2. Accounting by infringer of patent for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.

revert to the present incumbent. It is hoped that their treatment will be such as to redound to the credit of his predecessor, and show that the judge acted wisely in leaving them open for a later consideration.

Aside from those interesting disputes, it will be well to consider what has been settled and what has been left open by the former rulings. It was intimated that: (1) The master had made a mistake in computation, which affected the whole report. (2) It was not clear whether his 25 per cent. allowance on cost for expenses covered selling as well as shop expenses. (3) He ought not to have included the "new design." (4) It could not be assumed that complainants would have made the $1,174.44 profits if the defendant had kept out of the way. Non constat that he could have sold the higher-priced frames to the people who bought the cheaper-priced ones from defendant. True, defendant had practically driven the complainants from the market by putting so low a price on the infringing frame, and his low price had been so low as almost to eliminate his own profit.

However, back the report should go, and complainant could try to clear up the question of damages by further evidence, if he wished. And so back went the report, and at his work went the master again. Some of the things Judge Townsend told him, he understood; one thing which he thought that the judge had decided can only be found by inference; and then he argued a little as to whether the judge was right on the damage question. It is, to say the least, unwise to argue with a judge. The master is asked for facts, not for arguments. But argue he did, to some extent; and then, too, he referred, in language more or less emphatic, to the wanton and high-handed proceedings which he thought the defendant had indulged in, and suggested punishment dire and summary therefor. That was a suggestion which might very properly have been offered by counsel at the fitting time, if such a time should ever have occurred. It is the duty of the master to confine himself strictly to the facts by him found; and, if to such facts wantonness can be properly imputed, the trior ought to be, and, it is hoped, can be, relied upon to do his duty as he sees it. Hereafter it is expected that in certain respects the methods adopted in this report may be reasonably modified.

The master thinks that Judge Townsend decided that the profit on the mirrors should not be counted. Judge Townsend does not refer to the matter at all, but, as the master had made a recommendation to that effect in his first report, it is perhaps fair to assume that the judge agreed with him, and for that reason held his peace. At any rate, I am of that opinion from my own examination of the case, and shall so hold. The association between the frame and mirror is not so intimate—the two are not so amalgamated and connected in their necessary uses and functions—that one cannot stand without the other; and one does not, by any means, sell the other.

The 25 per cent. addition seems to have satisfied the judge, because he refers to it as something which had been done, and does not criticise it. It is also a practice too well established in this jurisdiction to be lightly set aside. The defendant argues that, if the

master can adopt his own experience, it is useless to introduce proof. But he argues in a circle. The master does not act on his own experience. When no satisfactory proof of actual expense is offered, the master avails himself of the best weapons within his reach to obtain a satisfactory solution. He did not believe the defendant's evidence. In cases of deception or uncertainty or evasion, or intentional suppression of evidence, one must come at a result based, if possible, upon something reasonable and tangible. It is not strange that the master was surprised to hear that expense which in the first year was practically 25 per cent. should go soaring up in the air in the following years, without any very satisfactory reason therefor. The 25 per cent. plan is accepted.

On the general question of whether the complainants can recover their supposed loss of profits as damages, it is well to outline the position which the court takes. . The plain fact which he who runs may read is that the fad, so called, respecting complainants' frames, which in every such case is a short-lived one, at best, had really run its course, or, at any rate, the better part of its course, in the years prior to the accounting. The frame was on the market for almost the entire period which under our patent law deprives the inventor of his monopoly. Large sales had been made by both complainants and defendant for about a year and one-half before the issuance of the patent. Of the defendant's sales during this period, surely, the complainants cannot object. The patent was issued September 25, 1894, and the defendant continued to sell for about a year and one-half longer. Complainants notified him to stop before they actually obtained their patent. He responded politely, saying he could find no patent on record, and would they kindly give him number and date. They admitted that the patent up to that time really consisted of the commissioner's promise to give them one, and they would send word as soon as it came. The defendant was not "notified of the issue of the patent," as the master several times insists that he was. The patent came, but they did not send word, and defendant kept on selling until at last suit was brought. These facts all tend to lead the mind of the trior into a rather tense condition, when he is asked to resolve any doubtful questions in favor of the complainants on the broad principles of equity. It is altogether too much of a case of the pot calling the kettle black. The complainants shall have whatever, under the strictest rules, they are entitled to, but they must be content with precisely and exactly their pound of flesh,—no more, no less.

One of the complainants admits that a year, and even less, is long enough to take the edge off the demand in the market for new designs of no extraordinary value. It is manifest that the additional testimony does not show that the sales made by the defendant invaded to any appreciable extent the former trade of the complainants. The market had lost its keen appetite for this special design, and it was only induced to accept those sold by the defendant through the attractiveness of the price. Certain customers to whom the frame was offered by the complainants excused themselves from buying by calling attention to the fact that it could be purchased more

cheaply from the defendant. Such answers may have been excuses or evasions of the subject. The design is not so alluring as to make the frame an indispensable part of the stock of the retailer or jobber, especially after its novelty had vanished.

The defendant contends that, upon all the facts in the case, it is clear that he made no profit, and asks that only nominal damages be given. It is not possible to follow him to that point. Upon the report as I read it, in the first period the frames cost $552.02, and brought in to the defendant $617.13. In the second period they cost $1,569.35, and he received $1,599.61. His clear profit was in both periods $95.37, and for that he should be held accountable. It will be seen that this opinion covers the issue as to whether the profits on the unpatented mirrors should be included, and also, incidentally, that it would be useless to ask for an increase of damages under the statute.

Let a decree be entered for the complainants to recover the sum mentioned above, with costs.